1  JACK W. LEE, SBN 71626
   SEAN TAMURA-SATO, SBN 254092
2  MINAMI TAMAKI LLP
   360 Post Street, 8th Floor
3  San Francisco, CA 94108
   (415) 788-9000
4  (415) 398-3887 (fax)
   jlee@minamitamaki.com
5  seant@minamitamaki.com
6
   AJ KUTCHINS, SBN 102322
7  PO Box 5138
   Berkeley, CA 94705
8  (510) 841-5635
   (510) 841-8115 (fax)
9  ajkutchins@earthlink.net
10
   Attorneys for Plaintiff Ronnie Brooks and the
11 Putative Class
12
13              UNITED STATES DISTRICT COURT
       NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION
14
15 RONNIE BROOKS, on behalf of himself and        Case No. 10-cv-01404 WHA
   others similarly situated,
16
17                          Plaintiff,            **NOTICE OF MOTION AND MOTION
                                                 FOR CERTIFICATION OF
18           vs.                                 SETTLEMENT CLASS AND
                                                 PRELIMINARY APPROVAL OF
19                                               SETTLEMENT**
   WILLIAMS TANK LINES, a California
20 corporation; MICHAEL WILLIAMS, an
   individual; MARK LILL, an individual, and     Judge:     Williams H. Alsup
21 DOES 1 through 50,                             Courtroom: 9
22                          Defendants.           Date:      May 12, 2011
23                                                Time:      2:00 p.m.
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2011, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable William H. Alsup in Courtroom 9 of the above-captioned Court, located at 450 Golden Gate, San Francisco, CA, Plaintiff Ronnie Brooks ("Plaintiff") will and hereby does move this Court for an order granting preliminary approval to the proposed class and collective action settlement, and certifying a class for settlement purposes.

This motion is based on the accompanying Memorandum of Points and Authorities; the Declarations of Jack W. Lee, Ronnie Brooks, Monica Ip, and David Rotman; the Joint Stipulation of Settlement and Release between Plaintiff and Defendants filed concurrently herewith; the pleadings, papers, and the entire record herein, and on such other evidence or argument as may be presented to the Court at the hearing of this motion.

Defendants Williams Tank Lines, Mike Williams and Mark Lill ("Defendants") do not oppose this motion.

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

I.     FACTUAL BACKGROUND........................................................................................2

II.    SUMMARY OF SETTLEMENT TERMS...................................................................3

III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO
THE CLASS ACTION SETTLEMENT AND SCHEDULE A FAIRNESS
HEARING...................................................................................................................5

     A.    Williams Tank Lines' Financial Condition Makes Settlement
Appropriate....................................................................................................6

     B.    Liability Is Contested and the Settlement Provides for Reasonable
Compensation for Class Members' Damages Under the Circumstances.............8

     C.    The Work Performed by Plaintiffs' Counsel Supports the Settlement.................11

     D.    The Settlement Results Form Serious, Arms-Length, Informed
Negotiations...................................................................................................12

     E.    The Terms and Allocation of the Settlement are Fair and Reasonable.................13

           1.    Allocation of Net Settlement Funds...........................................13

           2.    Attorneys' Fees.........................................................................14

           3.    Proposed Incentive Payment to Plaintiff Ronnie Brooks.........................15

           4.    California Private Attorneys General Act Allocation..............................19

           5.    *Cy Pres* Beneficiaries..................................................................19

IV.   PROVISIONAL CERTIFICATION OF THE CLASS SHOULD BE
GRANTED PURSUANT TO RULE 23...........................................................................19

     A.    Numerosity (Rule 23(a)(1))............................................................................20

     B.    Commonality (Rule 23(a)(2)) and Predominance (Rule 23 (b)(3)).......................20

     C.    Typicality (Rule 23(a)(3))..............................................................................26

     D.    Adequacy (Rule 23(a)(4))..............................................................................26

V.    THE FLSA CLASS IS APPROPRIATE FOR PROVISIONAL
CERTIFICATION PURSUANT TO 29 U.S.C. SECTION 216(B)...............................28

i

VI.     THE PROPOSED CLASS NOTICE IS APPROPRIATE.................................................29

VII.    PROPOSED CALENDAR................................................................................................31

VIII.   CONCLUSION..............................................................................................................32

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1

## **TABLE OF AUTHORITIES**

2

**Cases:**

3

*Brinker Restaurant Corp. v. Superior Court*,
165 Cal.App.4th 25 (2008), *rev. granted*, 85 Cal.Rptr.3d 688 (2008)..........................................9

4

5

*Brinkley v. Public Storage, Inc.*,
167 Cal.App.4th 1278 (2008), *rev. granted*, 87 Cal.Rptr.3d 674 (2009)......................................9

6

7

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001)...................................................18

8

*Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008).............................................9

9

*Bufil v. Dollar Financial Group*, 162 Cal. App. 4th 1193 (2008)................................................21

10

*Churchill Village LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004)............................29, 31

11

*Cicairos v. Summit Logistics, Inc.*, 133 Cal.App. 4th 949 (2005)................................................9

12

*Clesceri v. Beach City Investigations*,
2011 U.S. Dist. LEXIS 11676 (C.D. Cal. 2001).........................................................................30

13

*Davis v. Astrue*, 250 F.R.D. 476 (N.D. Cal. 2008)...................................................................20

14

*Doe v. D.M. Camp & Sons*, 2009 U.S. Dist. LEXIS 33504 (E.D. Cal. Mar. 31, 2009).................9

15

16

*Dole v. Circle A Construction*, 738 F. Supp. 1313 (D. Ida 1990)..................................................24

17

*Dunleavy v. Nadler,* 213 F.3d 454 (9th Cir. 2000).......................................................................5

18

19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)...................................................................29

20

*Flowers v. Regency Transportation*, 535 F.Supp.2d 765 (S.D. Miss. 2008)................................24

21

*Gay v. Waiters' & Dairy Lunchmen's Union*,
489 F. Supp. 282 (N.D.Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982)......................................20

22

23

*Glass v. UBS Financial Services.*,
2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)...............................................................19

24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................................21, 25, 26

25

26

*Harris v. Vector Marketing Corp.*,
--- F.Supp.2d ----, 2010 WL 4588967 (N.D. Cal. 2010).............................................................29

27

28

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

*In re Cont'l Ill. Securties Litigation*, 962 F.2d 566 (7th Cir. 1992)................................18

*In re Critical Path, Inc. Securities Litigation,*
2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002)....................................6, 10, 11

*In re LDK Solar Securities Lit.*, 255 F.R.D. 519 (N.D. Cal. 2009).......................20, 21, 24, 26, 27

*Kakani v. Oracle Corp*, 2007 U.S. Dist. LEXIS 47515 (N.D.Cal. 2007)......................................15

*Linney v. Cellular Alaska Partnership,* 151 F.3d 1234 (9th Cir. 1998)..........................................5

*Mendoza v. Tuscon Sch. Dist., No. 1*, 623 F.2d 1338 (9th Cir. 1980)..........................................29

*Misra v. Decision One Mortg. Co.,* 2009 WL 4581276 (C.D.Cal. 2009).....................................31

*Murillo v. PG & E*, 266 F.R.D. 468 (ED Cal. 2010)....................................................................31

*Singer v. Becton Dickinson & Co.,*
2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010)............................................................18

*Staton v. Boeing Corp.,* 327 F.3d 938 (9th Cir. 2003)......................................................15, 16, 18

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir.1993)............................................5, 6, 11

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)................................18

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009)....................19, 31

*Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010)........................................28

*Watkins v. Ameripride Services*, 375 F.3d 821 (9th Cir. 2004)....................................................25

*Wehner v. Syntex Corp.* 117 F.R.D. 641 (N.D.Cal. 1987)..............................................................26

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010)....................20

**Statutes:**

29 U.S.C. § 216(b)...........................................................................1, 4, 13, 28, 29, 30

Cal. Lab. Code § 226.7....................................................................................................22

Cal. Lab. Code § 512(a)..................................................................................................22

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1

Cal. Lab. Code § 2698, et seq...................................................................................4, 18

2

**Rules:**

3

Fed. R. Civ. P. 23......................................................................................*passim*

4

Fed. R. Civ. P. 23(a)...............................................................................................19

5

Fed. R. Civ. P. 23(a)(1)...........................................................................................20

6

Fed. R. Civ. P. 23(a)(2)...........................................................................................20

7

8

Fed. R. Civ. P. 23(a)(3)...........................................................................................26

9

Fed. R. Civ. P. 23(a)(4)...........................................................................................26

10

Fed. R. Civ. P. 23(b)(3).....................................................................................19, 20

11

Fed. R. Civ. P. 23(c)(2)...........................................................................................29

12

13

Fed. R. Civ. P. 23(g)................................................................................................2

14

**Regulations:**

15

29 C.F.R. § 782.2(a)................................................................................7, 8, 9, 23, 24

16

**Other Authorities:**

17

Alba Conte & Herbert Newberg, 4 *Newberg on Class Actions*, §§8.21, 8.39.............................31

18

19

Department of Labor, Wage and Hour Division Field Operations Handbook, §24c05...............25

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff Ronnie Brooks ("Plaintiff") seeks preliminary approval of a class action settlement (the "Settlement") with Williams Tank Lines, Mike Williams, and Mark Lill ("Defendants"), which is embodied in the Joint Stipulation of Settlement and Release between Plaintiff and Defendants (the "Settlement Agreement") filed concurrently with the Court.  The proposed class is comprised of approximately 590 Williams Tank Lines ("WTL") employees who have been employed by WTL in California at any time since April 2, 2006.

Subject to Court approval, Plaintiff has settled his claims and the claims of the proposed class against Defendants for $1,500,000.  This amount includes attorneys' fees and costs, the costs of notice and settlement administration, payment to the State of California pursuant to the Private Attorneys General Act, and a proposed Class Representative payment.  In no event will there be any reversion of settlement funds to the Defendants.  Defendants have also agreed to pay the employer's shares of payroll taxes on all settlement payment amounts treated as wages.  The proposed Settlement satisfies all of the criteria for preliminary settlement approval and falls within the range of possible final approval.

Plaintiff also seeks provisional certification of settlement classes pursuant to Rule 23 of the Federal Rules of Civil Procedure and Section 216(b) of the Fair Labor Standards Act ("FLSA"), the appointment of Plaintiff's attorneys as class counsel, the appointment of Plaintiff as the class representative, the appointment of a claims administrator to administer certain aspects of the Settlement, and direct distribution to all putative class members of notice of the Settlement, including their right to opt in to the FLSA collective action, opt out of the Rule 23 Class, or object to the Settlement.  Plaintiff requests that the Court enjoin Plaintiff and putative class members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such putative class members have requested exclusion, and the time for filing objections or requests for exclusion has elapsed.  Plaintiff also respectfully requests a schedule for a final fairness and approval hearing.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

## I.     FACTUAL BACKGROUND

For nearly five years, until April 9, 2009, Plaintiff Ronnie Brooks worked as a tanker truck driver for WTL.  WTL transports gasoline and other bulk petroleum products throughout California, primarily from local oil refineries to gasoline stations.  Plaintiff filed this action on April 2, 2010, on behalf of himself and all other WTL drivers in California, alleging violations of the Fair Labor Standards Act, the California Labor Code, and the California Business & Professions Code.

WTL is a privately-owned tank carrier headquartered in Stockton, CA.   WTL has operated approximately ten terminals and employed approximately 590 drivers (the "putative class members") within California during the relevant time period.

On January 27, 2011, the parties jointly proposed that the Court conditionally certify a FLSA collective action, and appoint Plaintiff's attorney as interim class counsel pursuant to Federal Rule of Civil Procedure 23(g), to allow the parties to participate in a mediation.  On February 7, 2011, the Court conditionally certified a FLSA collective action, and appointed Jack W. Lee as Rule 23(g) interim class counsel for purposes of conducting settlement negotiations.

Plaintiff has conducted a thorough investigation into the facts of this action and has diligently pursued an investigation of the claims of the putative class against WTL.  In addition to the motions for FLSA certification and  appointment of interim class counsel, the preparation of a mediation brief and the extended mediation itself, Plaintiff's investigation and work on behalf of the class includes:  Interviewing Plaintiff and dozens of percipient witnesses and putative class members, researching the petroleum trucking industry, conducting extensive legal research, drafting and amending Plaintiff's class action complaint, preparing initial disclosures, bringing a Motion for Temporary Restraining Order regarding Defendants' contacts with putative class members and negotiating a neutral notice procedure and other remedies to address those problems, attending the Rule 26 conference, corresponding with opposing counsel, drafting discovery requests (including deposition notices, requests for production of documents, and interrogatories), gathering and reviewing employment data regarding putative class members, and

2

reviewing more than 40,000 pages of documents produced by WTL related to the claims asserted on behalf of the putative class.

Plaintiff believes the claims he has asserted in this Action are meritorious based on alleged violations of the Fair Labor Standards Act, the California Labor Code, the California Business & Professions Code, and applicable Wage Orders of the California Industrial Welfare Commission.  WTL contends it has complied with the Fair Labor Standards Act, the California Labor Code, the California Business and Professions Code, and all applicable Wage Orders. Plaintiffs believe a class would be certified for trial.  WTL maintains that the Court would not certify a class.[1]

On March 7, 2011, the parties engaged in a full-day private mediation with David Rotman, Esq.  At the conclusion of this mediation, the parties reached a tentative agreement on the terms of a class-wide settlement agreement by accepting a mediator's proposal.  This tentative agreement was contingent on a further review of the financial condition of WTL and other related entities.

Having completed this further review of the financial records of WTL and other related entities, Plaintiff and his counsel are of the opinion that the agreed-upon terms of this Settlement are fair, reasonable, and adequate, and that the Settlement is in the best interest of putative class members in light of all known facts and circumstances, including, particularly, the financial condition of Williams Tank Lines.

## II.    SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement provides that Defendants will pay $1,500,000, plus the employer portion of payroll taxes associated with those settlement amounts designated as wages ("Gross Settlement Amount").  Settlement Agreement ¶ 14(c).  The Gross Settlement Amount shall include attorneys' fees and costs, notice and administration costs and expenses, payment to

---

[1] It should be stressed, however, that in compliance with this Court's "Memorandum Opinion Regarding Factors to Be Evaluated for Any Proposed Class Settlement" ("Memorandum Opinion") (February 7, 2011; Docket No. 51), Plaintiff and his counsel did *not* factor the likelihood, *vel non*, of class certification into their settlement position, and they refused to discuss the matter in the context of the mediation.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1   the State of California pursuant to the Private Attorneys General Act, and a proposed Class

2   Representative payment to Plaintiff for his services to the class.  *Id.* ¶ 14(e), (i).  As noted, no part

3   of the Gross Settlement Amount shall "revert" or otherwise be returned to Defendants.  *Id.* ¶

4   14(c).

5           Subject to the Court's approval, Plaintiff shall request $25,000 for his time and effort, as

6   well as the risks and (in particular) the costs to him and his family that have resulted from his

7   service as the named plaintiff.  If the Court grants preliminary approval, Plaintiff's counsel shall

8   file a motion approving an award of attorneys' fees and costs in conjunction with a motion for

9   final approval of the Settlement.  The parties have agreed that Simpluris, Inc. will serve as the

10  claims administrator, and that the costs of administering the claims process will be paid out of the

11  Gross Settlement Amount.  Simpluris, Inc. has submitted a bid to serve as the claims

12  administrator at a cost not to exceed $26,000.  The parties have designated $10,000 of the Gross

13  Settlement Amount to resolve California Private Attorneys General Act ("PAGA") claims;

14  seventy-five percent (75%) of this amount, or $7,500, will be paid to the State of California

15  pursuant to the PAGA.

16          The funds remaining from the Gross Settlement Amount after the payments listed above

17  have been deducted ("Net Settlement Amount") will be paid to class members.  All class

18  members who can be located will be issued a settlement check for their pro-rata share of the Net

19  Settlement Amount, based on the number of weeks that class member worked for WTL during

20  the liability period.  *Id.* ¶ 14(d).  Class members with notices returned undeliverable with no

21  forwarding address are excluded from the Settlement and will not be bound by the Settlement.

22  *Id.*

23

24          As part of the Settlement, Plaintiff seeks provisional certification of his state law claims

25  as an opt-out class action under Federal Rule of Civil Procedure 23.  *See Id.* ¶ 20.  Plaintiff also

26  seeks provisional certification of his FLSA overtime claim as an "opt-in" collective action under

27  29 U.S.C. Section 216(b).  *See Id.*  Under the Settlement Agreement, only class members who

28

4

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

cash their settlement check will be deemed to have "opted-in" to the FLSA collective action, and will release Defendants from all claims arising from their employment with WTL regarding the claims alleged in the suit through the date of the Court's order granting final approval to the Settlement. *Id.* ¶ 18.  Class members who do not opt out of the Rule 23 class but do not cash a settlement check will be deemed to have released all such state law claims, but not claims arising under the FLSA.  *Id.*

Any amounts remaining with the claims administrator after checks that are undeliverable or not negotiated are cancelled, shall be paid in equal amounts to 1) the Impact Fund; and 2) the scholarship program of the Truckers United Fraternity, Super Offspring of the Boss (TUFSOB), as *cy pres* beneficiaries.  *Id.*

### III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE CLASS ACTION SETTLEMENT AND SCHEDULE A FAIRNESS HEARING

The decision to approve or reject a proposed settlement is committed to the Court's sound discretion.  *Dunleavy v. Nadler,* 213 F.3d 454, 458 (9th Cir. 2000); citing *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1238 (9th Cir. 1998)).  "A settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'"  *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir.1993) (citations omitted).  That determination is often said to require "'a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'  This list is not exclusive and different factors may predominate in different factual contexts."  *Torrisi,* 8 F.3d at 1375 (citation omitted).

Many of those factors support the conclusion that the proposed settlement is indeed "fair, adequate and reasonable."  As in *Torrisi*, however, in this case one factor clearly predominates over the others – namely, the fact that WTL's financial condition is such that a more generous

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

settlement would jeopardize the health of the company to an extent that would be detrimental to the livelihood of a substantial portion of the putative class members currently in its employ. *See Torrisi,* 8 F.3d at 1376; *see also In re Critical Path, Inc. Securities Litigation*, 2002 U.S. Dist. LEXIS 26399 at *19-21 (N.D. Cal. June 18, 2002).

### A.   Williams Tank Lines' Financial Condition Makes Settlement Appropriate

Plaintiff's agreement to the proposed Settlement was based primarily on a detailed analysis of WTL's financial condition. Plaintiff believes that settlement is in the best interest of the putative class, as it will allow the class to obtain immediate, certain, and substantial monetary recovery against a company with limited financial resources. *See Critical Path*, 2002 U.S. Dist. LEXIS 26399 at *19-21.

Investigation and initial discovery in this matter led Plaintiff to believe that class certification and success on the merits was likely, although not without the inherent risks of litigation. Plaintiff was thus poised to litigate this case through class certification, the completion of discovery, summary judgment motions, and trial. However, Defendants have represented that litigating this case further would exhaust WTL's financial resources, and may lead WTL to file for bankruptcy. *See* Declaration of Jack W. Lee in Support of Motion for Certification of Settlement Class and Preliminary Approval of Settlement ("Lee Dec."), ¶ 6.

To further substantiate Defendants' statements regarding WTL's financial condition, Plaintiff required Defendants to produce financial documentation prior to the mediation, and to supplement this production after a tentative agreement was reached at mediation. *See* Lee Dec., ¶ 7. These documents included two years of tax returns, balance sheets, and profit-and-loss statements. *See* Lee Dec., ¶ 9. The documentation was not limited to that of the Defendants themselves, but rather included all related entities over which Defendants have effective control. Plaintiff retained a forensic accountant to analyze the financial documents produced by Defendants and determine the company's financial condition. *See* Declaration of Monica Ip in Support of Motion for Certification of Settlement Class and Preliminary Approval of Settlement

6

1   ("Ip Dec."). Based on this analysis, Plaintiff has determined that WTL has limited financial

2   resources and that a larger settlement would likely cause the partial or complete dismemberment

3   of the company, thereby jeopardizing the livelihood of many putative class members. *See* Ip

4   Dec., ¶ 13. Plaintiff estimates that the proposed Settlement amounts to approximately 100% of

5   WTL's current cash position. *Id.* ¶ 12.

6          Further, there is a substantial risk that if litigation continues for a significant amount of

7   time, even the current settlement amount will become unrecoverable. If this matter does not

8   settle at this time, substantial resources will be required to litigate this case through class

9   certification. If a class is certified, the parties will expend hundreds of thousands of dollars to

10  litigate this case through the close of discovery, summary judgment motions, and to verdict.

11  Continued litigation will require the parties to retain additional economic experts, as well as

12  experts in the petroleum and trucking industry. Based on Plaintiff's counsel's experience

13  litigating other cases in the petroleum trucking industry, Plaintiff also believes that third party

14  discovery and depositions concerning the distribution system for ethanol will need to take place

15  out of state in order to determine the applicability of the Motor Carrier Act as a defense to

16  Plaintiff's FLSA overtime claim. *Id.*; *see also discussion infra.*

17         Due to Defendant's financial condition, Plaintiff believes that he would be unable to

18  recover a materially larger amount for the class, even if he were to successfully litigate this

19  matter to judgment. Even if a larger amount were recoverable, it is likely that class members

20  would not receive any payment until after a lengthy appellate process or bankruptcy proceeding.

21         Plaintiff believes that WTL's resources should be directed toward fulfilling a settlement

22  for putative class members at this time. This proposed Settlement eliminates the expense and

23  uncertainty of continued litigation in a case where the potential recovery is severely limited by

24  Defendant's financial condition. The Settlement confers an immediate and substantial benefit to

25  class members while avoiding the potential of WTL's bankruptcy if this case is litigated further.

26  Plaintiff and his counsel recognize that it is in no one's interest to put Williams Tank Lines out of

27  business, or to put its employees, including approximately 250 putative class members, out of

28

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1   work.

**B.      Liability Is Contested and the Settlement Provides for Reasonable Compensation for Class Members' Damages Under the Circumstances**

The claims brought by Plaintiff in this case – alleging unpaid overtime, the denial of rest breaks and meal breaks, and failure to pay drivers for work actually performed before and after they get into their trucks -- involve complex and hotly disputed legal issues and fact-specific arguments that the parties will vigorously litigate if no settlement is reached.  Although it is undisputed that Defendants have failed to pay the overtime prescribed by the FLSA, they assert that WTL is excused from doing so under the Motor Carrier Act exemption because its drivers either do, or could reasonably be expected to, drive across state lines and/or haul products that are in a continuous stream of interstate commerce.  *See* 29 C.F.R. § 782.2(a).  WTL denies that it owes current and former employees backpay for missed meal and rest breaks, and asserts that its drivers have in fact been permitted to take such breaks.  WTL denies that it owes current and former employees for "off-the-clock" work on grounds that it paid drivers for all hours worked.

In support of these assertions, Defendants have gathered nearly 200 declarations from current employees, attesting to their expectations that they could be called upon to perform work in interstate commerce; to their freedom to enjoy meals and rest breaks; and to their confidence that they always are paid for all work-related activities.  In addition, Defendants have produced copies of "on-duty meal break" agreements, obtained over the last two years of the liability period from most current drivers.  Such agreements (if validly constituted and obtained) are authorized by California law to relieve the employer of the obligations to provide "off-duty" meal periods to signatory employees.

Plaintiff believes that he would prevail over these defenses – that he would establish that WTL does a *de minimis* amount of work in "interstate commerce" (within the unique meaning assigned to that term in FLSA/Motor Carrier exemption jurisprudence), and thus is not entitled to the exemption; that the majority of the work that Defendants identify as "interstate" is in fact *intra*state in nature; that the "breaks" WTL drivers take do not satisfy the state  law requirement

8

1   because the drivers are not "relieved of all job duties"; that the "on-duty meal break" agreements

2   do not satisfy state legal requirements; and that Defendants actual practice is to discount non-

3   driving work time when calculating drivers' compensation.

4            Regardless of their differences regarding how these issues would ultimately be

5   determined, the parties do agree that getting to that point would be extremely time-consuming

6   and expensive.  The question of whether Williams Tank Lines and putative class members fall

7   within the Motor Carrier Act exemption from overtime pay under the FLSA would require a

8   great deal of data analysis, expert and third party discovery and testimony, and extensive legal

9   analysis to resolve.[2]  And Plaintiff's state law claims touch on a long-standing, unresolved legal

10  controversy – which has divided both the California appellate courts and the federal district

11  courts – regarding the nature and extent of an employer's duty "to provide" breaks under

12  California law.[3]   At least until state law is clarified in that regard,  plaintiffs will feel compelled

13  to engage in extensive and fact-specific discovery and related litigation to ensure that they can

14  adequately demonstrate a class-wide failure to "provide" breaks regardless of how that term is

15  ultimately defined.

16           It cannot be denied that Defendants' potential liability in this case is substantial – and far

17  in excess of the settlement amount.[4]  Just to provide the Court with a rough measure:  Defendants

---

[2] Having now spent several years litigating the issue in other cases in the state and federal courts, Plaintiff's counsel can represent to the Court that much of case law interpreting the Motor Carrier exemption to the FLSA is murky, contradictory and often incoherent.  *See* Lee Dec., ¶ 12.

[3] It has been more than two years since the California Supreme Court granted review to resolve a split in the state appellate courts on this issue.  See, *Brinkley v. Public Storage, Inc.*, 167 Cal.App.4th 1278 (2008), *rev. granted*, 87 Cal.Rptr.3d 674 (2009); and *Brinker Restaurant Corp. v. Superior Court*, 165 Cal.App.4th 25 (2008), *rev. granted*, 85 Cal.Rptr.3d 688 (2008); *compare*, *Cicairos v. Summit Logistics, Inc.*, 133 Cal.App. 4th 949 (2005).  The state high court has yet to schedule argument.  In the meantime, the federal district courts, attempting to divine state law without that guidance, have taken diametrically opposing views.  *Compare, e.g. Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008); *with, e.g.*, *Doe v. D.M. Camp & Sons*, 2009 U.S. Dist. LEXIS 33504, 24-25 n.2 (E.D. Cal. Mar. 31, 2009).

[4] Plaintiff did not commission a "final expert class damage report" of the sort described in the Court's Memorandum Opinion (at p. 2), as such a report would not be of obvious assistance in the context of this proposed settlement.  On one hand, the nature of the damages in this case are such that a reasonable approximation of Defendants' potential liability regarding the principal claims can be calculated quite easily (as we do in the text that follows).  On the other hand, it is indisputable that Defendants' total potential liability is many times greater than the amount accepted in settlement; to determine precisely *how* many times greater seems academic.  As set forth in the text, the settlement

9

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

represent that class members worked a total of 71,868 work weeks and earned an average regular rate of pay of approximately $22.00 per hour during the class period.  California law requires that employees be paid one hour's wages for every day in which they have missed a rest break, and an additional hour's wages for every day in which they have been deprived of a meal break.  The FLSA requires that employees be paid "time and one half" – meaning, an additional half-hour's wages – for every hour worked in excess of 40 per week.  (WTL drivers, on average, work at least 48 hours per week, but are not paid overtime).  Based on these facts, WTL's potential liability for failing to provide paid rest breaks would be in excess of $7,000,000.  Even assuming that "on-duty meal break" agreements it obtained during a portion of the class period are valid, WTL's liability for failing to provide off-duty meal breaks during the first three years of the liability period would come to more than $4,000,000.  If all putative class members were held to be entitled to recover for unpaid overtime throughout the liability period, Defendants total liability would exceed $11,00,000.  And those figures (in themselves totaling more than $22,000,000) do not include the "off-the-clock" claim (which, by its nature, is more difficult to estimate); nor do they include the "liquidated damages" potentially available under the FLSA; nor the penalties provided in California law, nor interest, attorney's fees or costs.

In settlement, Defendants have agreed to put up $1,500,000 (none of which would revert to them), and to cover the employer's usual share of payroll tax liabilities arising from monies paid as "wages."  This is not an insubstantial amount of money for a company the size of WTL, as it amounts to an average payment of approximately $2,700 per class member, excluding any administrative costs or attorneys' fees.  But the more important point is the one this Court made, in similar circumstances, when it approved the *Critical Path* settlement:

> Although a settlement fund . . . is small compared to the damages alleged, it is large relative to the total amount available. [¶]  Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting

---

amount is predicated on how much money Defendants can make available without cannibalizing the company (and harming the interests of class members still working there) and on some calculation of the total liability amount, reduced by the risks of litigation, *etc*.  Thus an expert damages analysis would seem to be an unproductive use of limited funds, and would only reduce the amount finally available to class members.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

nothing [and] watching [the defendant] fall into bankruptcy . . . .   In light of the
threats to recovery as well as the limited amounts available under any
circumstances, it is not unreasonable for counsel and the class representatives to
prefer the bird in hand. *In re Critical Path Securities Litigation*, 2002 U.S. Dist.
LEXIS 26399, 20-21.

In short, when "the inherent risks of litigation" and "the cost, complexity and time of fully

litigating the case" are viewed in combination with the financial limitations of the Defendants and

the likelihood that a greater recovery would mean no recovery at all, the proposed Settlement is

quite reasonable. *Torrisi*, 8 F.3d at 1376.

**C.     The Work Performed by Plaintiffs' Counsel Supports the Settlement**

The stage of the proceedings at which this Settlement was reached also favors preliminary

approval of this Settlement.  Plaintiffs' counsel have performed a substantial investigation

concerning the facts and legal issues in the case.  Plaintiff and his counsel began investigating

Plaintiff's claims several months before this action was filed.  After filing his complaint, Plaintiff

served written discovery, including interrogatories and requests for admission, on WTL.

Plaintiff's counsel reviewed over 40,000 documents produced by WTL in response to these

discovery requests.  Plaintiff and his counsel also interviewed dozens of percipient witnesses and

putative class members about the facts, and conducted extensive legal research and analysis

relating to class certification and WTL's affirmative defenses.  Plaintiff's counsel's vigorous

defense of class members' rights led Plaintiff to file a motion for a temporary restraining order

regarding Defendants' contacts with putative class members.  This motion resulted in production

of a class member list and a remedial notice sent to the putative class regarding their rights in the

litigation.  Plaintiff's counsel prepared for and engaged in a full day mediation session, as

detailed *infra*, at which the parties and mediator David Rotman, Esq. discussed the strengths and

weaknesses of Plaintiff's case.  Plaintiff also retained an expert forensic account to analyze

WTL's financial condition.  As a result of the sustained effort in litigating this case over the past

year – as well as years of prior experience with class action litigation, the petroleum trucking

industry, and the specific legal claims in this case – Plaintiff's counsel was able to and did

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

negotiate the proposed Settlement with ample knowledge of the factual and legal issues underlying the claims and defenses in the action, the strengths and weaknesses of Plaintiffs' case, and Defendants' financial condition.

### D. The Settlement Results From Serious, Arms-Length, Informed Negotiations

The basic terms of the Settlement resulted only after extensive, arms-length negotiations. The parties participated in an all-day private mediation session with David Rotman on March, 7, 2011. A tentative agreement was reached through a mediator's proposal by Mr. Rotman, subject to a further review of WTL's financial condition by Plaintiff's forensic accountant. *See* Declaration of David Rotman in Support of Motion for Certification of Settlement Class and Preliminary Approval of Settlement ("Rotman Dec."), ¶ 5.

The proposed Settlement was reached after both sides had the opportunity to conduct an extensive investigation into the validity of the claims. Plaintiff prepared for the mediation by obtaining and reviewing Defendant's payroll data and calculating the potential damages and associated liabilities. Lee Dec., ¶ 7. Plaintiff also obtained WTL financial information and evaluated WTL's financial condition. *Id.* The parties prepared and submitted extensive mediation briefs to Mr. Rotman. *Id.* Plaintiff's counsel actively consulted with Plaintiff prior to and during this mediation. *Id.* ¶ 8. Plaintiffs were represented by counsel with years of experience and success in litigating Federal and California wage and hour law class action claims.

After reaching a tentative settlement at mediation, Plaintiff and his counsel engaged in a further review and analysis of WTL financial documents and data, with the assistance of their forensic accountant. Plaintiff's forensic accountant analyzed additional financial documents produced by Defendants, including tax returns, balance sheets, and profit-and-loss reports pertaining to WTL and all associated entities. Ip Dec. at ¶ 7-8. As stated *supra*, Plaintiff's analysis of WTL's records revealed that the company – though marginally profitable – has extremely limited financial resources that it can devote to settling the case; to demand more would jeopardize the continued viability of the company and thus the livelihood of more than 250

12

putative class members.  Lee Dec., ¶ 11.  Plaintiff's final agreement to the tentative settlement did not occur until after Plaintiff possessed sufficient information to make an informed judgment regarding Williams Tank Lines' financial situation, and the results that could be obtained through further litigation.  *Id.*

### E.    The Terms and Allocation of the Settlement are Fair and Reasonable

#### 1. Allocation of Net Settlement Funds

The Net Settlement Fund is comprised of the remainder of the $1,500,000 settlement amount after deductions have been made for attorneys' fees and costs approved by the Court, the costs of claims administration, payment to the State of California pursuant to the Private Attorneys General Act, and a Class Representative payment.  The Settlement provides for the net settlement fund to be divided among class members on a *pro rata* basis, with each putative class member's proportionate share being a function of the number of weeks he or she worked during the relevant class period.[5]  Fifty percent of this payment, including employer's portion of payroll taxes, shall be made during September 2011 or 60 days after the Settlement becomes final and effective under Paragraph 14(B), whichever is later; the remaining fifty percent, including employer's portion of payroll taxes, will be paid during September 2012.  It is fair and reasonable to allocate the net settlement fund on *a pro rata* basis because a procedure by which settlement shares are calculated based on individual class members' estimates of their overtime, meal and rest period, and off-the-clock hours would be vastly more cumbersome, complex, expensive, and disputatious, while not necessarily being any more reliable or fair.  In sum, the plan for allocating the net settlement fund among class members is fair and reasonable under the circumstances.

The parties have designated two subclasses because Plaintiff filed  a "hybrid" class action,

---

[5] Because Plaintiff's California Business and Professions Code Section 17200 claim is based on the same violations of the FLSA that give rise to Plaintiff's FLSA claim, participating Rule 23 class members are entitled to the same recovery regardless of whether they opt in to the FLSA collective action or if they are only members of the Rule 23 class.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1

2

3

4

5

6

7

8

9

which seeks certification of both a Rule 23 class action and a FLSA collective action under 29

U.S.C. § 216(b).  Settlement Agreement, ¶ 6.  The "California Class" shall consist of all persons

employed as drivers by Defendants in California between April 2, 2006 and the Date of

Preliminary Approval of the Settlement, and who do not opt out of the Settlement.  *Id.*

The"FLSA Plaintiffs" shall consist of all persons employed as drivers by Defendants in

California between April 2, 2006 and the Date of Preliminary Approval of the Settlement, and

who affirmatively opt-in to the FLSA collective action by cashing a Settlement Award as

provided herein.  *Id.*

10

11

12

13

14

Each class member is a potential member of the FLSA Plaintiffs and a potential member

of the California Class; as a result, the "Class Period" shall be the same for the FLSA Plaintiffs

and the California Class, and shall be from April 2, 2006 to the Date of Preliminary Approval of

the Settlement.  *Id.*

### 2. Attorneys' Fees

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's attorneys' fees and costs incurred in the litigation of this action shall be paid

from the Gross Settlement Amount.  In accordance with the Court's preferred practice, the

allowance or disallowance of an award to Plaintiff's attorneys will be considered by the Court

separately from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement itself.  *See* Memorandum Opinion at 3-4, ¶ 8.  Plaintiff's attorneys will file a motion

approving an award of fees and costs in conjunction with the motion for final approval of the

Settlement.  The motion for attorneys' fees and costs will detail the hours expended and the costs

advanced.  Fifty percent of the attorneys' fees and costs approved by the Court shall be paid to

class counsel during September 2011 or 60 days after the Settlement becomes final and effective

under Paragraph 14(b), whichever is later; the remaining fifty percent will be paid during

September 2012.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

### 3. Proposed Class Representative Payment to Plaintiff Ronnie Brooks

Both in the structure of the proposed Settlement, and in the manner in which it is being presented to the Court, the parties have tried hard to conform to and adopt the Court's preferred practices, as set out in the Memorandum Opinion and this Court's decision in *Kakani v. Oracle Corp*, 2007 U.S. Dist. LEXIS 47515 (N.D.Cal. 2007).[6]   In one respect, however, it is fair and necessary to vary somewhat from the Court's usual preference – and that is in regard to a class representative payment for named plaintiff, Ronnie Brooks.

As Mr. Brooks' accompanying declaration makes clear, he takes no exception with the Court's view that "[o]rdinarily, named plaintiffs ought to receive no more or less than the absent class members they purport to represent."  *Kakani*, 2007 U.S. Dist. LEXIS 47515 at 27; see Declaration of Ronnie Brooks in Support of Preliminary Approval ("Brooks Dec") at ¶ 5.  There are two reasons why this case is different, and why the proposed payment to this plaintiff is fair and reasonable.  The first reason is that Mr. Brooks has invested a great deal of personal time and effort into the investigation, prosecution, and settlement of the case, and as such has provided invaluable assistance to counsel.  The second – and greater – reason is that Mr. Brooks' willingness to step up as the sole named plaintiff has damaged, perhaps for the rest of his worklife, his ability to find work as a commercial driver, and to support himself and his family.

According to the Ninth Circuit, ". . .named plaintiffs . . . are eligible for reasonable incentive payments.  The district court must evaluate their awards individually, using 'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.'"  *Staton v. Boeing Corp.,* 327 F.3d 938, 977 (9th Cir. 2003) [citations and internal alterations omitted].

---

[6] The preceding discussion of the agreement regarding attorney's fees provides a pertinent example.

The response to most of those inquiries is that Ronnie Brooks' efforts were instrumental in the litigation and ultimate successful settlement of the case.  Mr. Brooks diligently went about contacting every current and former WTL driver whom he personally knew (and trusted), and arranged for several of them to speak with counsel; when they did, they provided crucial information.  Brooks Dec., ¶ 6.  During the months when he was still driving a truck for another company, Mr. Brooks consistently spoke with current and former WTL drivers whom he encountered on a daily basis at loading racks, and gleaned valuable information and contacts that furthered counsel's efforts.  *Id.*  He always responded immediately when contacted by counsel for information or other assistance, and regularly checked in during the pendency of the case to see if he could be of help.  Lee Dec., ¶ 4.   Mr. Brooks dedicated significant time to reviewing documents and preparing required disclosures, as well as providing his attorneys with requested documents and declarations and parsing materials received in discovery from Defendants.  Brooks Dec., ¶ 6.  He assisted with the motion for temporary restraining order filed in this matter, and stayed in close contact with counsel before, during and after the mediation.  *Id.*

Thus it can be fairly said (to paraphrase the Ninth Circuit) that the named plaintiff expended extensive time and effort to protect the interests of the class, and that the class has benefited directly from those actions.  *Staton v. Boeing Corp.,* 327 F.3d. at 977.  But the factor that counsels most strongly in favor of the proposed class representative award is the final one alluded to in *Staton* – namely the extent to which he has suffered adverse consequences as a result of stepping forward as the named plaintiff in this case. As described in the accompanying declarations, the tanker-truck industry in Northern California is a composed of a relatively small community of mostly small- to medium-size firms.  Lee Dec ¶ 3.  There is a relatively small pool of drivers who have obtained the licensing, approvals and security clearances necessary to

1    perform the work, and those drivers frequently move from company to company.[7]  *Id.*  Mr.

2    Brooks has changed jobs, working for different companies within that industry, more than a half-

3    dozen times prior to the filing of this lawsuit.  Brooks Dec., ¶ 8.  He had never had trouble

4    finding work, and had never gone more than a few weeks without a job.  *Id.*

5           Since he left his last trucking job, in December, 2010, Mr. Brooks has not been able to

6    find work in the petroleum trucking industry.  *Id.*  Since then, Mr. Brooks has applied,

7    unsuccessfully, to some two dozen trucking firms (listed in his declaration), several of which

8    were definitely "hiring."  *Id.* ¶ 9.  The same pattern has occurred repeatedly – he has been led to

9    believe that he would be hired, subject to passing a physical and/or some other test (all of which

10   he passed), but then his calls were not returned.  *Id.* ¶ 11-12.

11          The most recent example involved Fredrickson Tank Lines, where Mr. Brooks applied

12   late in March, 2011, and was interviewed in early April.  *Id.* ¶ 12.  The interview went very well;

13   the person conducting it said that he was "looking forward to working with" Mr. Brooks.  *Id.*  All

14   that needed to happen was a physical and a "background check."  *Id.*  Again, Mr. Brooks passed

15   the physical, but when he called back the following week, the person he had interviewed with

16   told him that "we're not going forward on this."  *Id.*  The man said that he had been told there was

17   a problem of some sort with Mr. Brooks' background – but "they" (apparently others in the

18   company) would not disclose the nature of the issue.  *Id.*.  Before he filed this lawsuit, there had

19   never before been a problem with Mr. Brooks' "background" and he has maintained a good

20   driving record.  *Id.* ¶ 13.

21          Plaintiff does not allege that Defendants engaged in a campaign to retaliate against him by

22   blocking his employment opportunities – he has no direct proof that they did.  But the effect on

---

[7] One demonstration of that fact, right at hand, is that WTL employs about 250 drivers at any one time – but that 590 putative class members have worked there at some point during the five-year liability period.  This rate of employee turnover – roughly 25% per year – is typical of the industry.

17

him has been exactly the same as if that had happened; the most reasonable inference as to why, all of a sudden, Ronnie Brooks cannot find a job in the petroleum trucking industry is that he stepped forward as the named plaintiff in this case.

The personal consequences for Plaintiff Ronnie Brooks have been devastating. Accustomed to earning upwards of $50,000 per year, he is now broke.  Brooks Dec., ¶ 16.  He cannot pay his rent, and he and his family are being threatened with eviction.  *Id*.  As Mr. Brooks says at the conclusion of his declaration:  "I believe that stepping forward and filing this lawsuit was the right thing to do – but I am not sure that I would do it again."  *Id*.

That goes to the heart of the policy in favor of providing Class Representative payments. As the Ninth Circuit recognized, "'since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought [an] "essential non-legal expense . . . .'"  *Staton*,  327 F.3d at 976, quoting, *In re Cont'l Ill. Securities Litigation*, 962 F.2d 566, 571 (7th Cir. 1992).   When employees in this industry come forward to fight for the legal rights of their co-workers, and sacrifice their own livelihoods as a result, the must be provided some form of at least partial compensation for their courage and effort, or the public interest underlying the wage-and-hour laws cannot be effectively vindicated.

Under these circumstances, a Class Representative payment of $25,000 to the sole named plaintiff is fair and reasonable.  See, *e.g.*, *Singer v. Becton Dickinson & Co*., 2010 U.S. Dist. LEXIS 53416, 24-26 (S.D. Cal. June 1, 2010) ["The $ 25,000 incentive award is . . . well within the acceptable range awarded in similar cases."]; discussing, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) [approving $50,000 class representative payment to named plaintiff]; and *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1995) [same]; *Glass v. UBS Financial Services.*, 2007 U.S. Dist. LEXIS 8476, 50-52 (N.D. Cal. Jan. 26, 2007) [per Chesney, J; approving $25,000 class representative payment].

### 4. California Private Attorneys General Act Allocation

The parties have allocated the sum of Ten Thousand Dollars ($10,000.00) to Plaintiff's claims under the California Private Attorneys General Act ("PAGA"). Seventy-five percent (75%) of this amount, or Seven Thousand Five Hundred Dollars ($7,500.00), will be paid out of the Gross Settlement Amount to the State of California pursuant to the PAGA, and the balance will become part of the Net Settlement Amount; fifty percent of the balance will be paid during September 2011 or 60 days after the Settlement becomes final and effective under Paragraph 14(b), whichever is later; the remaining fifty percent of the balance will be paid during September 2012.

### 5. *Cy Pres* Beneficiaries

Any amounts remaining with the claims administrator after checks that are undeliverable or not negotiated are cancelled, shall be paid by the claims administrator, in equal amounts, to the Impact Fund, an IRC 501(c)(3) entity, and the scholarship program of the Truckers United Fraternity, Super Offspring of the Boss (TUFSOB), also a IRC 501(c)(3) entity. The Impact Fund provides support class actions, including cases alleging the types of wage and hour violations alleged in this case, on behalf of low wage workers. The proposed *cy pres* distribution provided in the Settlement should therefore be approved. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1119-20 (E.D. Cal. 2009) [approving division of unclaimed settlement funds between two "public interest" organizations – the Boys and Girls Clubs and California Rural Legal Assistance – that "serve low-income workers"].

### IV. PROVISIONAL CERTIFICATION OF THE CLASS SHOULD BE GRANTED PURSUANT TO RULE 23

Plaintiff seeks provisional certification, pursuant to Rule 23 (a) and (b)(3) of the Federal

19

Rules of Civil Procedure, of a settlement class that consists of all WTL drivers in California who have been employed by WTL and/or any of its predecessors in interests or related entities, at any time since April 2, 2006.  In addressing the pertinent requirements of Rule 23, we will follow the outline traced in this Court's precedent.  *See In re LDK Solar Securities Lit*., 255 F.R.D. 519, 525, *et seq.* (N.D. Cal. 2009)).

## A. *Numerosity* (Rule 23(a)(1))

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D.Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982).  Courts have routinely held that the numerosity requirement is satisfied when the class comprises 40 or more members.  *See Davis v. Astrue*, 250 F.R.D. 476, 485 (N.D. Cal. 2008) ("As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement.").

WTL's payroll and personnel records show that the proposed class consists of approximately 590 current and former WTL drivers.  The putative class is thus sufficiently numerous.

## B. *Commonality* (Rule 23(a)(2)) *and Predominance* (Rule 23(b)(3))[8]

As this Court has summarized:

"A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact which are common to the class."  Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding his

---

[8] In its *In re LDK Solar Securities* class certification analysis, the Court did not separately address the question, posed by Rule 23(b)(3), as to whether the class action device would be "superior to other available methods for fairly and efficiently adjudicating the controversy."  However, in that case – and in the instant case as well – the answer to the "superiority" question flowed obviously and ineluctably from the related determinations regarding "commonality" and "predominance."  As the Ninth Circuit recently reiterated: "'The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.'  Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."  *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  As the accompanying discussion of commonality and predominance demonstrates, the common legal and factual issues are sufficiently complex that it would be prohibitively expensive – and wildly inefficient – for each individual truck driver to attempt to litigate them in separate lawsuits.

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

or her claim.  'The existence of shared legal issues with divergent factual predicates is sufficient' to meet the requirements of Rule 23(a)(2).

"The predominance requirement of Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2). The analysis under Rule 23(b)(3) 'presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2).'  In contrast to Rule 23(a)(2), "Rule 23(b)(3) focuses on the relationship between the common and individual issues."  Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication."  *In re LDK Solar Securities,* 255 F.R.D. at 525-526; quoting and citing, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The proposed class in this case consists of truck drivers who have worked directly for WTL, in California, during the Class Period.  Plaintiff's interviews with dozens of WTL drivers (current and former) working out of different terminals throughout California, as well as the documents and responses provided by Defendants in discovery, confirms that – with rare exception – WTL drivers perform the same work (basically, hauling fuel to and from refineries, blending terminals, and service stations) under virtually the same conditions; they receive the same training, and are subject to a single, uniform set of employment policies.  The legality of WTL's stated policies, and Defendants' implementation of those policies, are the common questions of law and fact upon which the outcome of the case would turn, were it tried – and those common questions eclipse what individual variations may exist.  A brief description of those common questions, as they relate to each of the four substantive claims for which class certification is sought, is as follows:

(1).    *Rest Breaks*:  California law requires that employees be given a paid, ten-minute rest break for every four hours "or major fraction thereof" that they work – and they must be freed of all job responsibilities when taking those breaks. *Bufil v. Dollar Financial Group*, 162 Cal. App. 4th 1193, 1200, 1206 (2008).  WTL's published policies (as well as our interviews with drivers) confirm that, between the time they leave the terminal at the beginning of their

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1  shifts and the time they return at the end (generally more than 10 hours later), drivers are

2  continuously responsible for their trucks at all times – meaning that they are *never* freed of all job

3  duties.   Thus an overarching common question of law pertinent to the rest break claim is whether

4  company policy, on its face, violates the state law governing rest breaks.  For their part,

5  Defendants have indicated that they believe federal law, governing the transportation of

6  hazardous materials, gives them no alternative to their policies, and thus trumps state law.  While

7  Plaintiff strongly disagrees with this assertion, both as a legal and factual matter, it too presents a

8  "common question" that is equally pertinent to all putative class members.

9

10          (2).     *Meal Breaks*:  California law requires that drivers be afforded a

11  continuous, (unpaid) 30-minute meal break for every five hours they work, and (as with rest

12  breaks) that they be relieved of all job duties during those meal periods.  Cal. Labor Code, §§

13  226.7 & 512(a); *see Bulfil v. Dollar Financial Group*, cited above.  Again, WTL drivers are not

14  relieved of the responsibility for their trucks until the ends of their shifts.  Moreover, according to

15  the drivers interviewed by Plaintiff's counsel, they are essentially forced to work without taking

16  any real breaks at all but instead are consistently pressured to "keep moving" at all times during

17  their shift, except when watching their trucks be loaded and unloaded.  Thus the same common

18  questions outlined above, in regard to the rest break claim, apply to the claim regarding meal

19  breaks.

20          The only significant variation concerns "on duty meal period waivers:" state law permits

21  employees to forego off-duty meal breaks – but only if certain conditions (including the signing

22  of a valid, revocable agreement to the effect) have been met.  For most of the liability period,

23  there were no such "waivers" covering any WTL drivers.  However, at some point in 2009, WTL

24  began requiring drivers to sign documents that purported to waive their on-duty meal breaks.

22

There is no reason, however, why this (relatively recent) development should render individual issues regarding meal breaks predominant over common issues. Indeed, the question of whether the uniform meal break waiver "agreements" obtained by WTL are legally valid is itself subject to a single determination common to a substantial portion of the class. If the agreements are not enforceable, then all WTL drivers, past and present, would be in precisely the same situation in regard to the meal break claim. But even if the agreements are enforceable, it would not take any significant amount of effort – either in or outside of the litigation process – to determine which putative class members executed such "waivers," and when they were executed. Thus to the extent there is individual variation, it should present no more of an obstacle to a class-wide determination than does the sort of variation in the calculation of damages that occurs in virtually every class action.

(3).     *"Off the Clock" Work*: WTL's trucks are in continuous use – two drivers, each working a 12-hour shift, share each truck. The trucks are outfitted with an electronic time-keeping system (called "Qualcomm"), and drivers are generally paid from the time they clock on to the system until the clock off. However, a driver's work consistently includes time when he or she is not in their truck (and thus not logged on to Qualcomm), including required pre-trip and post-trip inspections, and – not infrequently – the need to wait for her or his assigned trucks because the driver on the other shift is running late in completing deliveries. Drivers from WTL terminals throughout the state have reported to Plaintiff's counsel that Defendants and their supervisory staff maintain an unstated policy and generally consistent practice of denying payment for some or all of these additional hours of actual work. While the damages due individual class members as a result of this conduct will perforce vary, that again is not a basis for defeating the "predominance" requirement of Rule 23.

23

(4):    *Overtime*:  It is undisputed that WTL drivers work more than 10 hours each day, and more than 40 hours per week as a regular matter, and it is also undisputed that defendants do not pay "overtime" compensation to those drivers, as required by the FLSA. Defendants' stated position is that they are not required to pay overtime, based on the Motor Carrier Act exemption, which they claim is equally applicable to all putative class members. While (as this Court pointed out in the *Solar Securities* case), the "predominance" requirement is more stringent than the showing needed for "commonality" both tests are met in regard to the overtime claim.

To make out the Motor Carrier exemption, defendants must show *both* that WTL is a "private motor carrier" in interstate commerce, *and* that the drivers either actually performed interstate transportation or could "reasonably have been expected to make interstate runs." *Dole v. Circle A Construction*, 738 F. Supp. 1313, 1320 (D. Ida 1990).  The first prong is less straightforward than it might appear, for the phrase "in interstate commerce" has a different meaning in the context of the MCA exemption than it does in interpreting other laws – including the FLSA.  Among other things, if the interstate hauling WTL does is a "*de minimis*" portion of its overall operation, the exemption does not apply at all.  *Flowers v. Regency Transportation*, 535 F.Supp.2d 765, 769 (S.D. Miss. 2008).  In any event, however, the first prong of the MCA exemption is clearly a determination that would apply equally to all members of the putative class.

As to the second prong, Defendants have suggested in their interrogatory answers that there are two ways they will attempt to establish that all of their drivers are exempt.  First, Defendants have published memos to their drivers, stating: "you may be asked to deliver a load that takes you across State lines."   However, the interviews conducted by Plaintiff's counsel

24

indicate that in fact the great majority of WTL drivers are never asked to cross state lines, and do

not reasonably expect to do so.  In any event, whether Defendants' memos and other

pronouncements trump the reality of its day-to-day operations for purposes of determining if

drivers "reasonably could have been expected to make out of state trips" is itself a question that

will have to be answered for the class as a whole.  And while there are some very small number

of drivers who do regularly cross state lines, and thus may have to be excluded from recovering

overtime, that will be relatively easy to ascertain – and doing so would not "predominate" over

the determination regarding the mass of putative class members who did not do interstate

hauling.

The other way defendants have proposed to satisfy the second prong is by showing that

their drivers regularly transport ethanol, a substance that is (for the most part) produced out-of-

state, transported here (usually by rail), stored, and eventually blended with gasoline.  *See*

*Watkins v. Ameripride Services*, 375 F.3d 821, 826 (9th Cir. 2004) ("intrastate deliveries can be

considered part of interstate commerce if the property in question was originally delivered from

out-of-state and the intrastate route is merely part of the final phase of delivery.").  However,

according to the Department of Labor, "such transportation is not in interstate or foreign

commerce . . . except where the transportation is an integral part of a single movement which

commenced outside the State."  Department of Labor, Wage and Hour Division Field Operations

Handbook, §24c05.  This inquiry perforce must be resolved through extensive third party

discovery since Defendants have no direct knowledge as to where a given load of ethanol

originated, how long it has been stored in California, the extent to which it was intermixed with

other loads, whether it was bought and sold while still in storage, or other facts that bear on

whether a WTL haul from a storage tank to a "blending station" is part of a "single movement"

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

1   that originated out of state.  What is significant for present purposes, however, is that this is again

2   a determination that will apply with equal force to the claims of all members of the putative class,

3   and such determinations clearly predominate over individual issues of proof regarding the

4   overtime claim.

5       In short, as to each of Plaintiff's substantive claims, "common questions present a

6   significant portion of the case and can be resolved for all members of the class in a single

7   adjudication."  *In re LDK Solar Sec. Litig.,* 255 F.R.D. at 525-526; citing, *Hanlon v. Chrysler*

8   *Corp.*, 150 F.3d at 1019.  Class certification is thus appropriate as to all claims.  *Ibid.*

9

10

11      **C.**     ***Typicality*** (Rule 23(a)(3))

12      "The typicality requirement of Rule 23(a)(3) is satisfied when 'the claims or defenses of

13  the representative parties are typical of the claims or defenses of the class."  A plaintiff's claims

14  are typical if they 'are reasonably co-extensive with those of absent class members; they need not

15  be substantially identical.'"  *In re LDK Solar Securities Litigation*, 255 F.R.D.at 532; quoting,

16  *Hanlon*, 150 F.3d at 1020.  In this case, Plaintiff performed the same type of work, with the same

17  training, and under the same conditions as the other members of the putative class and his claims

18  are based on the same legal theories.  Those claims – including failure to comply with state and

19  federal laws regarding overtime, meal and rest period, and off-the-clock work – all arise from the

20  same factual bases applicable to all class members.  *Wehner v. Syntex Corp.* 117 F.R.D. 641, 644

21  (N.D.Cal. 1987); *see also Hanlon*, 150 F.3d at 1020.

22

23

24      **D.**     ***Adequacy*** (Rule 23(a)(4))

25      "The final hurdle of Rule 23(a) is that 'the representative parties will fairly and adequately

26  protect the interests of the class."  Determining whether the representative parties adequately

27  represent a class involves two inquiries: (1)does the named plaintiff and [his] counsel have any

28

26

conflicts of interest with other class members and (2) will the named plaintiff and [his] counsel act vigorously on behalf of the class? The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. '[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *In re LDK Solar Securities Litigation*, 255 F.R.D. at 532 [citations omitted].

As just discussed in regard to "typicality," the injuries suffered by Plaintiff were precisely identical to those suffered by the hundreds of other WTL drivers, who did the same job under the same conditions during the course of the Class Period, and who thus compose, with him, the class he seeks to represent.

This Court has already considered the adequacy of both Plaintiff and his counsel, when it granted conditional certification of the collective action and appointed the undersigned as interim class counsel (Docket No. 50), and the qualifications of both were set forth in some detail in the declaration of Ronnie Brooks (Docket No. 48) and the two declarations filed by Jack W. Lee (Docket Nos. 46, 49) in support of the motion that led to that ruling. Additional declarations by Mr. Brooks and Mr. Lee accompanying this motion, provide additional detail regarding the vigorous efforts that Plaintiff and his attorneys have made to investigate and prosecute this case and protect the interests of class members.

As those declarations show, there is nothing in Plaintiff's history that would compromise his ability to represent the class – on the contrary, the many certifications he holds permitting him to transport hazardous materials in themselves attest to his lack of any criminal record or other questionable activities. Brooks Dec., ¶ 3. As has already been discussed, Mr. Brooks has maintained an extensive personal involvement in the case, providing invaluable assistance in contacting other WTL drivers during the investigation phase, consulting on the pleadings,

27

providing supporting documents, reviewing documents produced by Defendants, and consulting with his counsel throughout the mediation process. *Id.* ¶ 6. A mark of his commitment to the class as a whole – and of the lack of any conflict on his part – is his willingness to endorse the proposed Settlement in order to protect the livelihood of class members who (unlike Mr. Brooks) continue to work for WTL, even though the Settlement (including the Class Representative payment) provides him a good deal less compensation than he would likely receive were the case successfully litigated.

As the Court has already had the opportunity to ascertain, Plaintiff's attorneys are qualified and experienced in class action litigation, including wage and hour matters with claims similar to those in this case. Plaintiff's counsel have diligently litigated this case and devoted significant resources to prosecuting Plaintiff's claims on a class-wide basis. Plaintiff and his counsel thus satisfy the adequacy requirement of Rule 23.

## V.   THE FLSA CLASS IS APPROPRIATE FOR PROVISIONAL CERTIFICATION PURSUANT TO 29 U.S.C. SECTION 216(B)

Plaintiff seeks provisional certification of the FLSA Plaintiffs' claims as a collective action pursuant to 29 U.S.C. § 216(b). Section 216(b) provides employees with a private right of action for violations of the FLSA on behalf of themselves and others similarly situated. A majority of courts have adopted a two-prong certification procedure for FLSA collective actions. *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010). Plaintiffs first seek conditional certification under this process, which is generally approved if plaintiffs make a showing that the class members are "similarly situated." As stated above, Defendants have stipulated to conditional certification of Plaintiff's FLSA claim, and this Court granted the parties' stipulation on February 7, 2011.

In most cases, a more rigorous review of collective action certification is undertaken after the parties have completed discovery and the matter is ready for trial, usually on a motion for

1

2

3

4

5

6

decertification by the defendant.[9]  *Id.*  However, Defendants do not oppose collective action treatment of Plaintiff's FLSA claim for purposes of settlement in this matter.  Moreover, as detailed above with regard to the California Class, the FLSA Plaintiffs are similarly situated in that they performed similar work for WTL under similar conditions.  It is undisputed that all FLSA Plaintiffs were subject to the same overtime policies and practices employed by WTL, specifically that they regularly worked over 40 hours per week and were not paid overtime.

7

8

9

Based on the foregoing, and as discussed above regarding the more rigorous standards of Rule 23, Plaintiff and the FLSA Plaintiffs are similar situated.  Certification of a FLSA collective action for settlement purposes under 29 U.S.C. § 216(b) is thus appropriate.

10

## VI.    THE PROPOSED CLASS NOTICE IS APPROPRIATE

11

12

13

14

15

16

17

18

19

20

21

The parties have agreed on a proposed class notice that is well-suited to inform class members of their rights.  Rule 23(c)(2) requires that absent class members receive the "best notice practicable under the circumstances."  The method and the content of the notice to class members should be designed to fairly apprise them of the terms of the proposed settlement "in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *citing Mendoza v. Tuscon Sch. Dist., No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980).  In order to meet the standards of Rule 23(c)(2), the parties must provide "individual notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

22

23

24

25

Defendants shall provide to the Settlement Administrator a spreadsheet listing each class member's name, last-known address, social security number, and number of weeks worked during the Class Period.  This spreadsheet shall be based on Defendants' payroll and other business records.  The claims administrator will send individual mailed notices and settlement

26

27

28

---

[9] Courts have held that, even at this second stage, the standards for collective action certification are far less stringent than those governing class actions under Rule 23.  *Harris v. Vector Marketing Corp.,* --- F.Supp.2d ----, 2010 WL 4588967 (N.D. Cal. 2010).

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT

checks to each class member using class members' last known addresses.  *See* Settlement

Agreement ¶ 17(a).  Prior to sending, the claims administrator will run a check of the class

members' addresses against those on file with the United States Postal Service's National Change

of Address List.  *Id*.  Defendants will also distribute the class notice to class members who are

current WTL employees at their respective workplaces.  *Id*.

If class notices are returned undeliverable, they shall be resent to the forwarding address,

if any, on the returned envelope.  *Id.* ¶ 17(b).  If there is no forwarding address, the claims

administrator will complete a search for a new address using class members' social security

numbers and the U.S. Postal Service's National Address Database.  *Id*.  If a new address is

located, the checks will be re-sent to those addresses.  *Id.*  Any class member whose notice is

returned undeliverable, and without a forwarding address, shall be excluded from the Settlement

and will not be bound by the terms of the Settlement.  *Id.*

The proposed class notice provides, in plain and easily understood language, information

about the meaning and nature of the action, the proposed settlement class, the terms and

provisions of the Settlement, the relief the Settlement will provide class members, the method for

calculating each class members' share of the Net Settlement Fund, the applications for attorneys'

fees and costs, the application for a Class Representative payment, the date, time and place of the

final settlement approval and fairness hearing, the scope of the release of claims to be provided

by class members, and the procedure and deadlines for requesting exclusion or submitting an

objection.  *Id.*

Class members will specifically be informed that, by accepting and cashing a settlement

check, the class member will be giving his or her consent to be a party plaintiff in this action

pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b).[10]  *Id.*

---

[10] Counsel for both the Plaintiff and Defendants have researched the issue and concluded that this is an appropriate
method for settling a "hybrid" case involving both a Rule 23 class action and a FLSA collective action.  Most such
settlements appear to include a "claims procedure," in which class members (and putative "collective action
plaintiffs") opt-in to the collective action in the course of filing their claims for recovery under the Rule 23
settlement.  See, *e.g.*, *Clesceri v. Beach City Investigations*, 2011 U.S. Dist. LEXIS 11676, 5-6 (C.D. Cal. 2001); see

30

This process complies with the standards of fairness, completeness, and neutrality required of a class notice, is reasonably calculated to give actual notice to class members, and meets the requirements of due process. Such notice satisfies all due process requirements. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (holding that notice is sufficient if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard); *Misra v. Decision One Mortg. Co.,* 2009 WL 4581276 at *9 (C.D.Cal. 2009) (approving direct mail notice, updated through National Change of Address Database, and "skip tracing" for returned notice); *see also* Alba Conte & Herbert Newberg, 4 *Newberg on Class Actions*, §§8.21, 8.39.

## VII.    PROPOSED CALENDAR

The following schedule sets forth a proposed sequence for the relevant dates and deadlines:

| | |
|---|---|
| 21 days after preliminary approval of the Settlement by the Court. | Last day for Defendants to provide a list of class member names, last-known addresses and social security numbers to the claims administrator. |
| 45 days after preliminary approval of the Settlement by the Court. | Last day for claims administrator to mail class notice. |
| 45 days after mailing of class notice by claims administrator. | Postmark deadline for class members to submit objections or requests to opt-out of the Settlement. |
| August 26, 2011 | Last day for Plaintiff to file a motion for final approval of the settlement and last day for Plaintiff to file a motion for fees and reimbursement of costs. |

also, *Murillo v. PG & E*, 266 F.R.D. 468, 478 (ED Cal. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009). However, nothing in section 216(b), or elsewhere in the statute, appears to require that additional step, and the parties thus propose dispensing with it out of deference to – and agreement with – this Court's stated preference for simply "cutting checks to class members" rather than imposing an unnecessary claims procedure. *See* Memorandum Opinion at 3, ¶ 7.

| September 29, 2011 | Final approval and fairness hearing. |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement, grant provisional certification of a class action under Rule 23 and a collective action under the FLSA for settlement purposes, appoint Plaintiff as the class representative, appoint Plaintiff's attorneys as class counsel, appoint Simpluris, Inc. as the claims administrator, and approve the proposed schedule for class notice and final approval.  Plaintiff also requests that the Court enjoin Plaintiff and putative class members from filing or prosecuting any claims, suits or administrative proceedings regarding claims released by the Settlement unless and until such putative class members have filed requests for exclusion and the time for filing objections or requests for exclusion has elapsed.

Dated:  April 28, 2011                                Respectfully submitted,

MINAMI TAMAKI LLP


By:  ___/s/ Jack W. Lee_____
        Jack W. Lee

Attorney for Plaintiff and the
Putative Class

NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF SETTLEMENT