United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RONNIE BROOKS, on behalf of himself
and others similarly situated,

    Plaintiff,

  v.

WILLIAMS TANK LINES, MICHAEL
WILLIAMS, and MARK LILL,

    Defendants.
_____/

No. C 10-01404 WHA

**ORDER GRANTING MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT**

## INTRODUCTION

In this wage-and-hour class action brought on behalf of truck drivers who have been employed at defendant Williams Tank Lines in California, the parties have reached a settlement agreement and now move for certification of the settlement class and preliminary approval of the settlement. For the reasons stated, the motion is **GRANTED**.

## STATEMENT

This action was filed by plaintiff Ronnie Brooks on behalf of himself and all other California truck drivers for defendants Williams Tank Lines, Michael Williams, and Mark Lill. It alleges failure to pay overtime wages under the Fair Labor Standards Act and state-law violations for failure to provide meal and rest periods, failure to pay wages for hours worked, failure to timely pay wages owed, and violation of Business and Professions Code Section 17200 and the Private Attorneys General Act.

For nearly five years, Brooks worked as a tanker truck driver for Williams Tank Lines. Williams Tank Lines transports gasoline and other bulk petroleum products throughout California, primarily from local oil refineries to gasoline stations. Williams Tank Lines is a privately-owned tank carrier headquartered in Stockton, CA. It has operated approximately ten terminals and employed approximately 590 drivers within California during the relevant claims period. An order previously conditionally certified a collective action under the FLSA, appointing plaintiff's counsel as interim class counsel pursuant to FRCP 23(g).

In addition to the normal tasks of litigation, class counsel has interviewed plaintiff and dozens of percipient witnesses and putative class members, researched the petroleum trucking industry, brought a motion for temporary restraining order regarding defendants' contacts with putative class members and negotiated a neutral notice procedure and other remedies to address those problems, gathered and reviewed employment data regarding putative class members, and reviewed more than 40,000 pages of documents produced by Williams Tank Lines related to plaintiff's claims (Lee Decls., Dkt. Nos. 46 at ¶ 12 and 58 at ¶ 5).

After a full-day private mediation with Attorney David Rotman, the parties reached a tentative agreement on the terms of a class-wide settlement agreement. This tentative agreement was contingent on a further review of the financial condition of Williams Tank Lines and related entities. That review is now complete, and the parties have brought the instant motion.

**ANALYSIS**

**A.   CERTIFICATION OF SETTLEMENT CLASSES**

In determining whether class certification is appropriate, the party seeking class certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). Pursuant to Rule 23(a), for a named plaintiff to obtain class certification, the Court must find: (1) numerosity of the class; (2) that common questions of law or fact predominate; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class. In addition, in the instant

case, plaintiff seeks to certify a class under Rule 23(b)(3). Certification under Rule 23(b)(3) requires that a district court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Class counsel seek certification of both a Rule 23 class action and a Fair Labor Standards Act collective action. Under the FLSA, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. 216(b). Accordingly, counsel propose the following classes:

> California Class: All persons employed as drivers by defendants in California between April 2, 2006 and the date of preliminary approval of the settlement, and who do not opt out of the settlement.
>
> FLSA Class: All persons employed as drivers by defendants in California between April 2, 2006 and the date of preliminary approval of the settlement, and who affirmatively opt in to the FLSA collective action by cashing a settlement award as provided in the class settlement agreement.

Pursuant to these definitions, each class member is *potentially* a member of both the FLSA class and the California class; the class period and basic qualifying criteria are the same. Defense counsel have filed a statement of non-opposition to certification of these classes.[1]

---

[1] The parties request "conditional" certification of the classes in conjunction with their settlement. Courts generally permit this procedure, but before they evaluate the settlement under Rule 23(e), the settlement class must pass muster under Rules 23(a) and (b), just as in the case of a litigated class. Indeed, federal courts must pay "undiluted, even heightened, attention" to class certification requirements in a settlement context. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003) ("When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention.") (citation omitted) (overruled on other grounds).

### 1. California Class

#### a. Rule 23(a)(1): Numerosity

The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. "Although plaintiff[] need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement." *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal. 2007) (Patel, J.) (citation omitted). The parties agree that Williams Tank Lines' payroll and personnel records evidence a class of approximately 590 current and former drivers. This order finds that plaintiff has satisfied the burden required by Rule 23(a)(1).

#### b. Rule 23(a)(2) and 23(b)(3): Commonality and Predominance

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding his or her claim. "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019.

The predominance requirement of Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2). The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." In contrast, "Rule 23(b)(3) focuses on the relationship between the common and individual issues." Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication. *Hanlon*, 150 F.3d at 1022. In addition, Rule 23(b)(3) asks whether the class action device would be "superior to other available methods for fairly and efficiently adjudicating the controversy." This consideration weighs in favor of class certification when "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

4

The proposed class consists of truck drivers who have worked directly for Williams Tank Lines in California during the class period. Drivers for Williams Tank Lines all perform the work of hauling fuel to and from refineries, blending terminals, and service stations under virtually the same conditions, and they receive the same training and are subject to a single, uniform set of employment policies (Lee Decl., Dkt. No. 49 at ¶ 4(b)). The legality of Williams Tank Lines' policies and implementation of those policies present common questions of law and fact upon which the outcome of this case depends. Those common questions predominate over any individual variations that may exist.

*First*, as to plaintiff's claim of rest-break violations, California law requires that every employer give rest breaks "based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." 8 CAL. ADMIN. CODE § 11040(12)(A); *see also Bufil v. Dollar Fin. Group, Inc.*, 162 Cal. App. 4th 1193, 1199, 1206 (2008). Defendants' published policies and plaintiff's counsel's interviews with drivers confirm that, between the time they leave the terminal at the beginning of their shifts and the time they return at the end (generally more than 12 hours later), drivers are continuously responsible for their trucks at all times. In other words, they are never freed of all job duties (Dkt. No. 49 at ¶ 4(b)(i) and Dkt. No. 48 at ¶ 8). Therefore, a common question of law regarding plaintiff's rest-break claim is whether defendants' company policy violates state law governing rest breaks. Although defendants counter these assertions by arguing that federal law preempts California rest-break requirements, such defense also presents a common question to all proposed class members.

*Second*, as to plaintiff's meal-breaks claim, California law requires that employers provide a 30-minute meal break for every five hours that employees work. CAL. LABOR CODE § 512(a); *see also id.* § 226.7 and *Bulfil*, 162 Cal. App. 4th at 1199, 1206. As stated above, Williams Tank Lines drivers are responsible for their trucks until the end of their shifts. The same common questions discussed above thus apply to the claim regarding meal breaks. In 2009 Williams Tank Lines began requiring drivers to sign documents in which they waived their on-duty meal breaks pursuant to a state law exception allowing for such waivers (Dkt. No.

5

49 at ¶ 4(b)(ii)). This order finds, however, that this development late in the class period does not render individual issues regarding meal breaks predominant over common issues. The question of whether the uniform meal-break waiver agreements are legally valid is itself a common and predominate issue for a substantial portion of the class.

*Third*, plaintiff's counsel point to the common issue of "off the clock" work. Williams Tank Lines trucks are in continuous use: two drivers, each working a 12-hour shift, share each truck. The trucks are outfitted with an electronic timekeeping system, and drivers are generally paid from the time they clock on to the system until they clock off. A driver's work, however, can include time when he or she is not in his or her truck (and thus not logged onto the timekeeping system), including required pre-trip and post-trip inspections, or the need to wait for assigned trucks because the driver on the other shift is running late (*id.* at ¶ 4(b)(iii)). Plaintiff's counsel challenge defendants' unwritten but practiced policy of denying payment for some or all of these additional hours of actual work. This again presents a predominate issue for class treatment.

*Fourth*, and finally: overtime. Williams Tank Lines drivers regularly work more than 10 hours per day and more than 40 hours per week, and it is undisputed that defendants do not pay overtime compensation to drivers, as required by the FLSA. Defendants argue that they are not required to pay overtime pursuant to the Motor Carrier Act exemption, which they claim is equally applicable to all proposed class members. To demonstrate that this exemption applies, defendants must show that Williams Tank Lines is both "engaged in interstate commerce; and [] all of its drivers could reasonably have been expected to make interstate runs." *Dole v. Circle "A" Construction, Inc.*, 738 F. Supp. 1313, 1322 (D. Idaho 1990) (italics and citation omitted). The first prong is clearly a determination that would apply equally to all members of the proposed class.

As to the second exemption prong of the Motor Carrier Act, defendants may assert that the exemption applies because drivers are given a memo that states: "you may be asked to deliver a load that takes you across State lines." Defendants may also argue that because their drivers regularly transport ethanol, which for the most part is produced out-of-state and

6

transported here, their runs are part of a single movement of such ethanol in interstate commerce. These are both decisions that need to be made for the class as a whole. They will thus predominate over any individual issues for purposes of determining the viability of recovery for claims for lack of overtime compensation.

In sum, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Class certification is thus appropriate as to all California claims.

### c. Rule 23(a)(3)–(4): Typicality and Adequacy

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In addition, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Determining whether the representative parties will do so involves two inquiries: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and his counsel act vigorously on behalf of the class? *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Accordingly, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations and quotation marks omitted).

Named plaintiff Ronnie Brooks performed the same type of work, with the same training, and under the same conditions as the other members of the proposed class, and his claims arise from the same factual bases applicable to all class members. Plaintiff's injuries are also the same as those suffered by the other Williams Tank Lines drivers (Dkt. Nos. 49 at ¶ 4(c) and 48 at ¶¶ 6–12). Declarations of plaintiff and Attorney Jack Lee demonstrate that they have investigated and prosecuted this case to effectively advance the interests of class members (Dkt. Nos. 48–49 and 58–59). There is nothing in plaintiff's history that would compromise his ability to represent the class. Brooks has maintained personal involvement in the case,

7

1  providing assistance in contacting other Williams Tank Lines drivers, consulting on the
2  pleadings, providing supporting documents, reviewing documents produced by defendants, and
3  consulting with his counsel throughout the mediation process (Dkt. No. 59 at ¶ 6).
4       Plaintiff's counsel are experienced in class action litigation, including wage-and-hour
5  matters with claims similar to those in this case.  They have diligently litigated this case and
6  devoted significant resources to prosecuting plaintiff's claims (Dkt. Nos. 46, 49, and 58).
7  Plaintiff and his counsel thus satisfy the typicality and adequacy requirements of Rule 23.

### 2. FLSA Class

Plaintiff seeks certification of the class's FLSA claim as a collective action pursuant to 29 U.S.C. 216(b).  Section 216(b) provides employees with a private right of action for violations of the FLSA on behalf of themselves and others similarly situated.  A majority of courts have adopted a two-prong certification analysis for FLSA collective actions.  *See Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010) (Conti, J.).  An order has already approved conditional certification under the first prong (Dkt. No. 50).  After discovery, a district court engages in "a more searching review" at the second prong of certification analysis, usually on a motion for decertification by the defendant.  *Ibid.*  At both stages, "the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)."  *Harris v. Vector Marketing Corp.*, — F. Supp. 2d —, 2010 WL 4588967, at *4 (N.D. Cal. Nov. 5, 2010) (Chen, J.).

Defendants do not oppose collective action treatment of plaintiff's FLSA claim for purposes of settlement.  Moreover, as discussed above concerning the California class, the FLSA plaintiffs are similarly situated in that they performed similar work for Williams Tank Lines under similar conditions.  This order finds that plaintiff and the FLSA class are similarly situated. Certification of a FLSA collective action for settlement purposes under 29 U.S.C. 216(b) is thus warranted.

### B. PRELIMINARY APPROVAL OF SETTLEMENT

"A settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted). Many different factors may predominate in different factual contexts. *Ibid.*

#### 1. Benefit to Class Members

This settlement agreement provides substantial monetary benefit to class members from a company defendant with limited resources. But it is not a large percentage of the potential recovery. Defendants will pay $1.5 million to a class of approximately 590 members. After fees and expenses approved by the Court are taken out of such amount, this will yield an average payment of approximately $2,700 per class member. Fees of the claims administrator are capped at $26,000.

The parties did not commission a final expert damages study of the potential recovery, despite the Court's stated preference to have this information for evaluating any proposed class settlement (Dkt. No. 51 at ¶ 2). The parties' expert only examined defendants' financial condition. The closest the parties come to a figure for potential liability is the unsworn statement of: "more than $22,000,000" (Br. 10). For sake of analysis, assuming this as the maximum recovery, the settlement amount would represent a percentage recovery of 6.8 percent at best. This is a low-end settlement. Drivers will release 100 percent of their claims in exchange for less than a dime on the dollar of recovery. Nevertheless, as the parties have demonstrated as a preliminary matter that this is all defendants can afford to pay, as further explained below, preliminary approval will be granted.

In negotiations, once defendants represented that litigating this case further may lead Williams Tank Lines to file for bankruptcy, plaintiff's counsel required defendants to produce financial documentation for both defendants themselves and all related entities. Plaintiff's counsel retained a forensic accountant to determine the company's financial condition. Based on this analysis, plaintiff's counsel have confirmed that a larger settlement would likely cause the partial or complete dismemberment of the company, thereby jeopardizing the livelihood of many class members (Ip Decl. ¶ 13). Plaintiff's counsel estimate that the proposed settlement

9

amounts to approximately 100 percent of Williams Tank Lines' current cash position (*id.* ¶ 12). There is a substantial risk that if litigation continues for a significant amount of time, even the current settlement amount will become unrecoverable.

Counsel have structured the payments by defendants in order to minimize the risk that Williams Tank Lines will go bankrupt. In the absence of this agreement, the risk presented by defendants' financial condition not only puts payments for any recovery in jeopardy, but it also puts the jobs of approximately 250 class members in jeopardy, as those are the number of the approximately 590 total class members who are currently employed by Williams Tank Lines.

In addition to the $1.5 million, defendants will pay the employer portion of payroll taxes associated with those settlement amounts designated as wages. Together, this gross amount shall include attorney's fees and costs approved by the Court, notice and administration costs and expenses, payment to the State of California pursuant to the Private Attorneys General Act, and a proposed class representative compensation payment for the named plaintiff, if approved by the Court. No part of the gross settlement amount shall revert or otherwise be returned to defendants.

Plaintiff's counsel propose to file a motion for attorney's fees and costs in conjunction with their motion for final approval of the class settlement. The parties have agreed that Simpluris, Inc., will serve as the claims administrator; the costs of administering the claims process will be paid out of the gross settlement amount, but pursuant to Simpluris's bid, costs will not to exceed $26,000. The parties have designated $10,000 of the gross settlement amount to resolve California Private Attorneys General Act claims, of which $7,500 will be paid to the State of California and the remainder to class members.

Once these deductions are made, the rest of the gross settlement amount will be paid to class members. All class members who can be located will be issued a settlement check for their pro rata share, based on the number of weeks that such class member worked for Williams Tank Lines during the class period. Class members with notices returned undeliverable with no forwarding address will be excluded from the class settlement and will not be bound by the terms of or release in the class settlement.

Under the terms of the class settlement, only class members who cash their settlement check will be deemed to have opted in to the FLSA collective action, and will release defendants from all claims arising from their employment with Williams Tank Lines alleged in this suit. Class members who do not opt out of the Rule 23 class but do not cash a settlement check will be deemed to have released all state-law claims, but not claims arising under the FLSA. More regarding the release will be discussed below.

Fifty percent of each class members' settlement payment will be sent during September 2011 or 60 days after the class settlement becomes final and effective pursuant to the terms of the class settlement agreement, whichever is later; and the remaining fifty percent will be sent during September 2012. Any amounts remaining with the claims administrator after checks that are undeliverable or not negotiated are cancelled shall be paid in equal amounts as *cy pres* payments to (i) the Impact Fund; and (ii) the scholarship program of the Truckers United Fraternity, Super Offspring of the Boss (TUFSOB).

"Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing . . . In light of the threats to recovery as well as the limited amounts available under any circumstances, it is not unreasonable for counsel and the class representative[] to prefer the bird in hand." *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002). Given Williams Tank Lines' financial condition, the risks of litigation, the amount of due diligence undertaken by plaintiff's counsel, and the diligence of both sides in negotiating the class settlement agreement, this order finds that its terms are fair and reasonable. Preliminary approval is appropriate.

**2. Scope of Release**

Preceding the hearing on preliminary approval of the class settlement, an order identified a problem with the release as it was originally executed. The problem was that, although the settlement agreement otherwise called for two distinct but overlapping classes (a California class and a FLSA class, as explained above), the release lumped them together. It did not account for the scenario of a class member who had not opted out of the California class but had not cashed her settlement check and was thus not in the FLSA class. It was written as if

11

all class members would be in both classes. In response to the order requesting a response to this problem, the parties executed a revised settlement agreement with new release language to address the problem (Dkt. Nos. 67 and 69).

The class settlement agreement now calls for a release by class members of claims "arising out of Plaintiff's causes of action for failure to pay wages and overtime wages under the Fair Labor Standards Act, 29 USC section 201, et seq.," and many state-law claims, except that only FLSA class members release the FLSA claims. "Class Members who do not opt out of the California Class and are not FLSA Plaintiffs (do not cash the first settlement check), do not release the FSLA claims, but release all other Released Claims" (Dkt. No. 69-1 ¶ 19). This new release language addresses the scenario of a class member who is in the California class but not in the FLSA class, as well as the scenario of a release by a class member in both classes. Thus, the scope of the release is now appropriately limited.

### 3. Attorney's Fees and Representative Payment

Class counsel do not specify the amount of attorney's fees they will seek from the $1.5 million settlement fund. The class settlement agreement provides that they will move for such fees preceding the final fairness hearing. The class settlement agreement is not contingent upon counsel's receipt of any certain amount or percentage of fees. Class counsel will also seek a compensation payment for named plaintiff Ronnie Brooks, but the class settlement agreement is not contingent upon receipt of this payment. The Court will be able to set a fair and reasonable figure for attorney's fees and make findings on the propriety of a class representative compensation payment based on briefing preceding the final fairness hearing, taking into account that this will be a low-end settlement. While the Court is usually skeptical of representative incentive payments, in this instance plaintiff has been genuinely prejudiced to his detriment on account of having served as class representative, and the Court will give serious consideration to some compensation payment, although not one as generous as requested by counsel.

### 4. Notice To Class Members

Rule 23(c)(2) requires that absent class members receive the "best notice practicable under the circumstances." The settlement agreement provides for administration of notice to class members as follows: Defendants will provide to the claims administrator a spreadsheet listing each class member's name, last-known address, social security number, and number of weeks worked during the class period, based on defendants' payroll and other business records. The claims administrator will then send individual mailed notices and settlement checks to each class member using his or her last-known address. Prior to sending, the claims administrator will run a check of the addresses against those on file with the United States Postal Service's National Change of Address List. Defendants will also distribute the class notice to class members who are current Williams Tank Lines employees.

If class notices are returned undeliverable, they shall be re-sent to the forwarding address, if any, on the returned envelope. If there is no forwarding address, the claims administrator will complete a search for a new address using class members' social security numbers and the U.S. Postal Service's National Address Database. If a new address is located, the checks will be re-sent to those addresses. Any class member whose notice is returned undeliverable, and without a forwarding address, shall be excluded from the settlement and will not be bound by its terms. This order finds that this process is reasonably calculated to give actual notice to class members and comports with the requirements of due process.

The proposed class notice provides information about the meaning and nature of the action, the definitions of the classes, the terms of the settlement, the method for calculating each class members' share of the settlement fund, class counsel's anticipated request for fees and costs and for a class representative compensation payment, the date, time, and place of the final fairness hearing, and the procedure and deadlines for opting out of the class or submitting an objection. The form of notice submitted, however, is approved as long as the following changes are made:

*First*, on page one, the first sentence in the second to last paragraph states "This case has been actively litigated for the past two years." This does not make sense, as the case has only

13

1  been pending for a little over a year. Counsel must clarify. Limiting the sentence to the
2  following will suffice: "This case has been actively litigated."

3  *Second*, on the bottom of page one, after the sentence ending with, "which has been
4  preliminarily approved by the Court," counsel shall please add the following sentence: "The
5  settlement amount would represent a percentage recovery of 6.8% at best of the potential full
6  recovery, but the parties nevertheless assert this is a good settlement because paying more may
7  push Williams Tank Lines into bankruptcy. This means that class members will give up 100%
8  of their claims but receive only about 6.8% of the asserted value of the claims."

9  *Third*, on page two, the second sentence of section II.A shall be changed to "If approved
10 by the Court, deducted from the Gross Settlement Amount will be sums for attorney's fees and
11 costs . . ."

12 *Fourth*, in section II.B, counsel shall please bold the last sentence of paragraph three,
13 which states: "Settlement Award checks will remain valid and negotiable for 90 calendar days
14 from the date of issuance and will be cancelled by the Settlement Administrator if not cashed
15 within that time."

16 *Fifth*, in that same section, counsel shall please bold the first sentence of paragraph five,
17 which states: "Expired Settlement Award checks will not be reissued."

18 *Sixth*, at the end of Section II.F, counsel shall please add the following: "Class members
19 are welcome to write to the Court in the manner described in Section III.D ('How Do I Object
20 to the Settlement?'), to tell the Court whether they support or oppose the idea of this
21 Enhancement Award. Of note, the Class Representative has put his career in jeopardy by filing
22 this suit; he also signed a broader release than the one applicable to all other class members."

23 *Seventh*, on page four, at the end of section III.C (on exclusions from the FLSA class),
24 counsel shall add the following: "Please note, however, that if you do nothing, even though you
25 will not be in the FLSA class, you will still be in the California class, unless you submit a
26 request for exclusion as described above in Section III.B."

27 *Eighth*, Section III.D shall be completely rewritten as follows:
28     You can object to the terms of the Settlement before Final Approval by the
    Court. You may send a written objection to the chambers of the Honorable

14

Judge William Alsup, in U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, labeled with the Case Number 10-cv-1404. Please send copies of any written objection to the following:

> Class counsel            Defendants' counsel
> [name and address]       [name and address]

Any written objection must state each specific reason in support of the objection and any legal support for the objection. Any written objection must also state the full name, address, date of birth, and dates of employment by defendants in California of the objecting class member. To be valid and effective, any objections to approval of the Settlement must be sent to the Court and the above-listed attorneys no later than [], which is 45 calendar days from the mailing date of this Notice. Do not telephone the Court.

Any person who submitted a complete and timely Request for Exclusion as discussed above is, upon receipt, no longer a member of the Settlement Classes and is therefore barred from objecting to the Settlement.

You can also object to the terms of the Settlement before Final Approval by the Court by filing a notice of intention to appear and appearing at the final fairness hearing, which is set to occur on September 28, 2011, at 2:00 p.m., before Judge Alsup, in Courtroom 9 of the Phillip Burton United States Courthouse at the address listed above. The notice of intention to appear should be sent to the Court at the address listed above, should also be copied to the attorneys listed above, and must also be sent no later than [], which is 45 calendar days from the mailing date of this Notice. The final fairness hearing will concern the Court's consideration of final approval of the Settlement.

To recap, you can: (1) send a written objection without appearing at the final fairness hearing, or (2) both file a written objection and appear at the hearing after filing a notice of intention to appear, or (3) file a notice of intention to appear and appear at the hearing without filing a separate written objection.

You do not need an attorney to file an objection, a notice of intention to appear, or to appear at the final fairness hearing, though you may obtain one at your own expense.

*Ninth*, counsel shall please add to Section IV, in addition to the extant information identifying where the final fairness hearing will be held, that it is Judge Alsup's courtroom, for sake of clarity to attending class members. Regarding the sentence, "The hearing may be continued without further notice to the Settlement Classes," counsel shall please add, "but you may contact class counsel or the settlement administrator preceding the hearing date to confirm that the hearing will occur at the date and time specified in this notice."

## CONCLUSION

For the foregoing reasons, the parties' motion for certification of the settlement class and preliminary approval of the settlement is **GRANTED**. This order grants preliminary

15

approval of the proposed settlement, conditional certification of a class action under Rule 23 and a collective action under the FLSA, appointment of plaintiff as the class representative, appointment of plaintiff's attorneys as class counsel, appointment of Simpluris, Inc., as the claims administrator, and approval of the proposed schedule for settlement administration.[2]

Consistent with the parties' stipulation of settlement, the following dates shall be set in this matter: The last day for defendants to provide a list of class member names, last-known addresses, and social security numbers to the claims administrator shall be **21 CALENDAR DAYS** after this order. The last day for the claims administrator to mail class notice to class members shall be **45 CALENDAR DAYS** after this order. The postmark deadline for class members to submit objections or requests to opt out of the settlement classes shall be **45 CALENDAR DAYS** after mailing of class notice by the claims administrator. The last day for plaintiff's counsel to file a motion for final approval of the settlement and a motion for fees and reimbursement of costs shall be **AUGUST 26, 2011**. The final approval and fairness hearing shall occur on **SEPTEMBER 28, 2011, AT 2:00 P.M.**

**IT IS SO ORDERED.**

Dated: May 13, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] The parties also request that this order enjoin plaintiff and putative class members from filing or prosecuting any claims, suits, or administrative proceedings regarding claims released by the settlement unless and until such putative class members have filed requests for exclusion and the time for filing objections or requests for exclusion has elapsed. Given that the parties failed to submit any briefing on this issue, however, this order declines to do so.

16